KC35romS                        Sentence

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,                New York, N.Y.

            v.                           19 Cr. 116 (KMW)

REINALDO ROMAN,

                Defendant.

------------------------------x

                                         December 3, 2020
                                         12:40 p.m.


Before:

                    HON. KIMBA M. WOOD,

                                         District Judge



                        APPEARANCES

AUDREY STRAUSS
     Acting United States Attorney for the
     Southern District of New York
BY:  ADAM HOBSON
     Assistant United States Attorney

SHER TREMONTE, LLP
     Attorneys for Defendant
BY:  HEATHER YU HAN
     MICHAEL TREMONTE
```

KC35romS                        Sentence

1          (Case called; all parties electronically present)

2          THE DEPUTY CLERK:  Will counsel please state their

3     appearances for the record?

4          MR. HOBSON:  Good morning, your Honor.  Adam Hobson

5     for the government.

6          MS. HAN:  Good morning, your Honor.  Heather Han and

7     Michael Tremonte for Mr. Roman.  Mr. Roman is appearing via

8     video and, for the record, due to the Court's instruction that

9     only one counsel may appear by video, Mr. Tremonte is currently

10    present via the conference line.

11         THE COURT:  All right.  Thank you.

12         We are still having technical issues.  I cannot see

13    any of you but you have been waiting a long time and I am

14    prepared to proceed if that is what counsel wish.  I will ask

15    first the defense counsel.

16         MS. HAN:  That is fine with us, your Honor.

17         THE COURT:  Thank you.

18         Mr. Hobson?

19         MR. HOBSON:  No objection from us if it is okay with

20    the defendant.  I will note that we can see your Honor -- or at

21    least I can.

22         THE COURT:  Okay.

23         Can you, Ms. Han?

24         MS. HAN:  Yes, I can see your Honor too.

25         THE COURT:  Mr. Roman, can you see me?

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

KC35romS                          Sentence

1          THE DEFENDANT:  Yes, ma'am, I can.

2          THE COURT:  Okay.

3          THE DEFENDANT:  Good morning.

4          THE COURT:  Good morning.  How are you feeling today?

5          THE DEFENDANT:  I'm good.  I'm okay.  I came straight

6    from work.

7          THE COURT:  I see.  Is your mind clear?

8          THE DEFENDANT:  Yes, it is, ma'am.

9          THE COURT:  All right.  I note that Mr. Roman,

10   Ms. Han, AUSA Hobson and I are all appearing via CourtCall

11   which permits each of us to see one another's faces and hear

12   one another.  The Judges are required to ask a defendant such

13   as you, Mr. Roman, a number of questions on the record before

14   sentencing you by video conference.  You have the right to be

15   sentenced by me in a courtroom where we would both be in the

16   presence of one another.

17          Do you understand that you have that right?

18          THE DEFENDANT:  Yes, ma'am.

19          THE COURT:  You also have the right to waive -- which

20   means give up -- your right to be sentenced in person.  You may

21   have good reasons for choosing to be sentenced by video

22   conference.

23          Do you understand that?

24          THE DEFENDANT:  Yes, ma'am.

25          THE COURT:  Have you discussed with your lawyer

1    whether you should give up your right to be sentenced in

2    person?

3              THE DEFENDANT:  Yes, I have.

4              THE COURT:  All right.  Ms. Han, could you please tell

5    me the reason or reasons that Mr. Roman chooses to be sentenced

6    by video conference?

7              MS. HAN:  Yes, your Honor.

8              We discussed with Mr. Roman the options to be

9    sentenced in person which, under the current circumstances,

10   might not happen for an infinite amount of time and then the

11   other option being to be sentenced remotely via video

12   conferencing, and Mr. Roman wishes to proceed with sentencing

13   and voluntarily waives his right to be physically present at

14   the sentencing hearing.

15             THE COURT:  Thank you.

16             Mr. Roman, do you agree with what Ms. Han has just

17   said?

18             THE DEFENDANT:  Yes, I do, ma'am.

19             THE COURT:  Okay.  I find that Mr. Roman has knowingly

20   and voluntarily waived his right to be sentenced by me in my

21   courtroom and chooses to be sentenced via video conference.  I

22   also find, for the reasons specified by Ms. Han, that the

23   sentencing in this case cannot be further delayed without

24   serious harm to the interest of justice.

25             Mr. Roman, have you had an adequate opportunity to

KC35romS                        Sentence

1   review your presentence report with Ms. Han?

2           THE DEFENDANT:  Yes, ma'am.

3           THE COURT:  Okay.

4           Ms. Han, do you wish any changes to the presentence

5   report?

6           MS. HAN:  Nothing beyond the comments that we noted in

7   our written submission, your Honor.

8           THE COURT:  All right.  Thank you.

9           At this point I will be glad to hear Ms. Han for

10  anything you wish to say.  I will note that I have reviewed

11  your sentencing submissions and all of the exhibits to it.

12          MS. HAN:  Thank you, your Honor.

13          As the Court notes, the case was initially set for

14  sentencing in March, and in our written submission which was

15  filed in early March we asked for a sentence substantially

16  below the 60 months recommended by the Probation Department.

17  And, as the Court also notes, Mr. Roman was subsequently

18  released on bail in late March to home confinement due to the

19  health risks posed by COVID-19.  Up until his relapse in

20  mid-September Mr. Roman had maintained a perfect record of

21  compliance with all of his release conditions.  And, since his

22  remand on October 15, he has spent another six weeks in the

23  Essex County Correctional Facility and for several reasons,

24  many of which we detailed in our written submission, we believe

25  that a sentence substantially below the 60 months recommended

KC35romS                              Sentence

by Probation is sufficient and not greater than necessary under

the circumstances.  And the Court is already familiar with our

written submission so I will just briefly summarize a few

salient points.

         The first is that Mr. Roman presents a very low risk

of reoffending.  Our written submission already lays out his

personal history and characteristics.  This is Mr. Roman's

first federal offense and his first felony conviction since

2002.  In other words he has been largely staying out of

trouble for over 15 years until he his arrest in the current

case.  During those 15 years Mr. Roman undertook tremendous

efforts to turn his life around.  Even though he was constantly

battling addiction he remained a productive member of society

in several aspects.  First, he managed to maintain long periods

of sustained employment as a brick layer and has been a member

of the same union since 2002.  He was very competent, possessed

a very strong worth ethic, and was consistently gainfully

employed.

         On the domestic front, Mr. Roman has been his father's

primary caregiver since 2011.  Caring for a demented patient is

a tremendous undertaking, to say the least, and the many

letters from Mr. Roman's supporters which your Honor has

reviewed speak to how incredibly devoted Mr. Roman has been

toward his father.

         Mr. Roman has also been in a committed relationship

1    with his fiancee Diana Toro for the last six years and I should

2    have noted at the beginning that Diana Toro and her aunt Edna

3    Toro are both calling in, they're both currently present on the

4    phone line, I believe, in support of Mr. Roman and just by way

5    of his relationship with Ms. Toro, Mr. Roman has also become a

6    father figure to Ms. Toro two children.  Again, I won't repeat

7    what is said in the letters but the letters submitted by

8    Ms. Toro's extended family speak to the loyal, the kind, and

9    dedicated person that Mr. Roman is to them.  And,

10   unfortunately, these positive efforts became undone when

11   Mr. Roman's addiction worsened in 2017 following a car

12   accident.

13            Your Honor, I want to pause here because this is a

14   really critical turning point for Mr. Roman.  In that accident

15   he suffered severe injuries and, as a result, lost the ability

16   to work as a bricklayer, and because of his injuries he was

17   given highly-addictive prescription medicines which further

18   worsened his addiction.  And between those two things he made a

19   terrible, terrible decision -- he turned to selling drugs in

20   order to feed his habits.  And we are saying this not to offer

21   an excuse -- and Mr. Roman, more than anyone else, is aware

22   that he alone is responsible for the decisions that he made --

23   but just to put things in perspective, if we were to take his

24   drug addiction out of the picture for just a moment, we would

25   see a radically different, just picture where his criminal

KC35romS                          Sentence

conduct would appear out of place and would stand in stark

contrast to the positive efforts that he undertook to be a

law-abiding and productive member of society.  And everything

else, including a sustained employment record, a steady,

committed relationship, extensive family support all go to

Mr. Roman's demonstrated willingness and ability to seek

treatment and to rehabilitate.  These are all indicators of low

recidivism and high capability of rehabilitation.  And here I

wanted to briefly just touch upon his bail violation which I am

sure is on everyone's mind here and explain why this one time

lapse shouldn't mean -- doesn't mean that a lengthy sentence is

necessary for deterrence.  It bears emphasis that the bail

violation stems from a single incident of drug use.  Your Honor

is familiar with the record.  It was an aberration from his

otherwise truly exemplary record of compliance with all of his

home incarceration and other bail conditions.

        Now, we say this not to minimize the seriousness of

drug use, especially given Mr. Roman's very troubled history

with drug addiction.  We realize that there is a direct link

between his addiction and his involvement in criminal activity

but, still, the fact remains that Mr. Roman, despite that

one-time lapse, has demonstrated a true willingness and really

the ability to rehabilitate and he has a track record, if your

Honor looks at his, our written submission, he has a track

record of seeking out treatment of his own and receiving

1   treatment and managing his addiction, of course, all the way up

2   until the car accident in 2017.

3          So, at the end of the day, this one incident of drug

4   use, as regrettable as it was, just doesn't erase all his other

5   positive efforts to beat addiction which we all know it is a

6   very -- it is a very powerful hold on anyone in the best of

7   circumstances, not to mention for someone like Mr. Roman who

8   has been struggling with this most of his life.

9          And just, lastly, I wanted to go back to the goals of

10  sentencing and wanted to talk about why a very short period of

11  incarceration here, and combined with more supervision where we

12  would also ask the Court to require mandatory drug treatment

13  for Mr. Roman is the appropriate sentence here because it

14  balances the need for deterrence and just punishment but also,

15  of course, Mr. Roman's ability to rehabilitate.

16         Incarceration is a form of punishment and is not the

17  only answer here.  Supervision is also a substantial form of

18  punishment and if the Court is so inclined, we would ask the

19  Court to impose very strict conditions including home

20  incarceration as part of the special conditions for Mr. Roman's

21  supervision and not only will this allow Mr. Roman to stay out

22  and seek treatment which is really what he needs here to

23  rehabilitate, but to also give him the chance to continue to

24  care for his father.  I won't repeat the circumstances

25  surrounding his father's illness but suffice it to say that he

KC35romS                          Sentence

1    is in a very bad condition, he just cannot take care of himself

2    and needs the help of his son.  While it is fortunate that

3    Ms. Toro and her son have been willing to assume part of the

4    responsibility, it's not an overstatement to say that it has

5    been a crushing burden on them and has taken a toll.  So, with

6    Mr. Roman incarcerated for a long period of time, which again,

7    it is all due to his own doing but still, the fact remains that

8    the burden will fall on Ms. Toro and her son who really are the

9    innocent ones here and have nothing to do with the criminal

10   activity.

11        And lastly, before I wrap up, I just wanted to remind

12   the Court of a few additional considerations that weigh in

13   favor of imposing a shorter sentence.  One is Mr. Roman's very

14   serious medical conditions including the ruptured brain

15   aneurysm that he suffered while incarcerated at the MCC in

16   December 2019 and that that is separate and apart from the

17   current, ongoing threat posed to his health by COVID-19.  It is

18   my understanding that as of today there are more than 40

19   inmates at Essex County Jail who have tested positive for

20   COVID-19 and Mr. Roman is currently housed in a dorm life

21   setting with 40 other inmates and they all share the same

22   bathrooms and showers so it is fair to say that everyone is

23   living with a very culpable fear that any of them could

24   contract the virus at any given time.

25        And also, just on top of that, aside from Mr. Roman's

1    own health problems, we all know that due to the pandemic the

2    conditions of confinement in penitentiary settings around the

3    country have really taken a blow.  We are not talking about the

4    normal kind of hardship, the discomfort that is usually

5    associated with a term of imprisonment, we are talking about

6    constant 24/7 lockdown; no personal, no family/attorney visits;

7    no programs, no drug treatment services, and no really sort of

8    free time outside the cell every day.  So, and just in light of

9    that, and I know that just Courts in and out of this circuit

10   have taken that into account, have taken into account the

11   particularly harsh conditions of confinement as grounds for

12   downward variances.  And Mr. Roman has been very fortunate, he

13   was out for most of the first part of the pandemic but then he

14   has been in since October 15th.  And if the Court is to impose

15   any term of incarceration, chances are he is going to just stay

16   in his current facility until he serves out his sentence

17   because there is now this very -- there is this effort to avoid

18   transporting prisoners among prisons.  And I just I know that

19   it is not biting precedent but it has been brought to our

20   attention that state courts in New Jersey have routinely given

21   more credit to offenders who have served time in Essex County

22   Jail because of the particularly harsh COVID-related conditions

23   there since earlier this year.

24           So, that's what I had to say and I also just wanted to

25   note that, with the Court's permission, Mr. Roman has prepared

1    a very brief statement that he would like to make directly to

2    your Honor.

3              Thank you.

4              THE COURT:  Thank you.

5              Mr. Roman, there is no requirement for you to speak

6    but I would be glad to hear you now.

7              THE DEFENDANT:  Thank you, ma'am.

8              Good afternoon -- actually, it is 12:02.  Yes, I wrote

9    something.  Good afternoon.  I am wanting to wish all that are

10   present well wishes and that they find themselves in the best

11   of health and in God's care.  I would like to thank the Court

12   for allowing me the opportunity to say something on my behalf

13   at this hearing.

14             I am filled with overwhelming remorse, guilt, and

15   pain.  I have caused a great deal of pain to a lot of people,

16   both my family and community, many who care for me

17   wholeheartedly and unconditionally.  I have failed them with my

18   deviancy, most of all my father who is in most need of my care

19   and support at this moment in time.  There was no excuse for my

20   behavior.  It was ill-intended and totally against the laws and

21   morals of society.  I am living a nightmare that I wish to wake

22   from.  I just want this to be over with so that I may continue

23   the next chapter of my life and life's terms.  I am sorry for

24   what I have done and ask for forgiveness for all who I have

25   hurt.  I am sorry.  I disrespected my wife, my family and

1    myself, and most of all my dad, as well as my community.

2    Again, my actions were ill-intended and against the laws of

3    society.  I'm sorry.

4           Thank you.

5           THE COURT:  Thank you, Mr. Roman.

6           THE DEFENDANT:  Thank you, ma'am.

7           THE COURT:  Would the government like to be heard?

8           MR. HOBSON:  Yes, your Honor.  And can I confirm that

9    the Court received our sentencing submission as well?

10          THE COURT:  I did.  Thank you.

11          MR. HOBSON:  Your Honor, I won't repeat everything

12   that we said in that and I will rely largely on that submission

13   but I will make a few points that I think are particularly

14   important with respect to Mr. Roman.  First of all, his role in

15   the offense.  The defendant was right in the middle of this

16   conspiracy.  I think we can see that he is not at the very top,

17   he wasn't the top supplier here, but it was important to note

18   that he was not a street-level dealer.  The guidelines range

19   here, which is 70 to 87 months, pretty accurately gets his

20   relative role in this conspiracy.

21          As the Court knows, Alberto Velasquez was the top of

22   this conspiracy and the Court sentenced him to 188 months'

23   imprisonment.  In contrast, Antonio Burgos was actually one of

24   Mr. Roman's workers and therefore less culpable than Mr. Roman

25   and the Court sentenced Mr. Burgos to 14 months imprisonment

KC35romS                    Sentence

The 70 to 87-month guideline range is right in the middle of
that and reflects the fact that Mr. Roman is not at the bottom
of the conspiracy but he is also not at the top.

        The defendant here was selling a particularly
dangerous brand of drugs.  He was selling a very large amount
of heroin and, importantly, this is heroin that was laced with
Fentanyl.  I think we saw in his undercover buy that he didn't
disclose to his buyers that he was lacing his heroin with
Fentanyl which made it extra deadly.  The idea was that this
would be passed on to users and addicts on the street who also
presumably would not know that it contained Fentanyl.  This
made his drug dealing particularly dangerous.

        Also, in response to something defense counsel said, I
want to note that the defendant's operation was not the sort of
operation that you see generally with an addict who was simply
feeding his habit.  These are not one-off next-level street
sales to get his next hit.  He was running a relatively
sophisticated operation.  He was selling $3,000 worth of heroin
at a time.  These are 600 individual doses at a time and he had
people like Antonio Burgos working for him brokering some of
these sales to the street-level dealers who were then turning
it onto the street.

        On the point of deterrence, we have no confidence that
the defendant would be deterred by a below guideline sentence
here.  The defendant has a lengthy criminal history, this is

KC35romS                    Sentence

1    his 12th conviction, and some of his prior convictions included

2    very serious sentences and very serious prison time including

3    one stint of approximately five years in prison.  That did

4    nothing to deter him.  It is important to note that the

5    defendant is now in his 50s which is an age when most criminals

6    have aged out of committing crimes.  The defendant has not.

7    The defendant appeared to have escalated his criminal activity,

8    moved up the supply chain, and was selling a significant amount

9    of drugs.  He is also someone who had the skills to succeed.

10   He is an experienced brick layer, he got his GED.  In a prior

11   prison term he received training in custodial management but he

12   decided, instead, that it was easier and more lucrative to sell

13   drugs and to sell Fentanyl.

14          His behavior in the instant case, which defense

15   counsel addressed to some extent, I think gives more concern

16   about whether the defendant can be deterred because, as noted,

17   the Court allowed the defendant to be out on bail pending

18   sentencing to address his health issues.  Instead of resolving

19   his health issues the defendant still couldn't follow the law,

20   he returned to using drugs, he tested positive for drugs, and

21   he betrayed the Court's trust in doing that.  It shows that the

22   defendant has little respect for the Court's sentences and he

23   needs a substantial sentence to deter him from further criminal

24   behavior and to once and for all send a message that his drug

25   dealing will not be accepted.

1        For those reasons, your Honor, we believe a guideline

2   sentence here is appropriate.

3        THE COURT:  Thank you, Mr. Hobson.

4        I will note that I am required to calculate

5   Mr. Roman's sustaining guideline range.  It is the range set

6   forth in his plea agreement and the presentence report which is

7   a total offense level of 25 and a Criminal History Category of

8   III which results in a custodial range of 70 to 87 months.

9        I move now to the factors set forth in Section 3553.

10  The offense is very serious because selling heroin that is

11  laced with Fentanyl, even if it has only a trace of Fentanyl,

12  is very serious because of its highly addictive quality.

13       Mr. Roman's history and characteristics are, I

14  believe, largely as set forth by Ms. Han.  He has fought

15  addiction most of his adult life -- I will address you

16  directly.  You maintained employment for years.  You have

17  serious medical problems including a brain aneurysm.  You have

18  the support of your union local and your many relatives who

19  attest to your good character and history.

20       The goals of sentencing in this case are to promote

21  respect for the law, provide individual deterrence of the

22  defendant, and to protect the public from further crimes of the

23  defendant and to serve the goal of general deterrence.

24       Given Mr. Roman's poor health, his need to care for

25  his father, his good employment history, I believe that the

KC35romS                          Sentence

goals of sentencing here will be met by 60 months in prison
with credit for time-served.

        Mr. Roman, I sentence you to 60 months in prison with
credit for time served.  You will be on supervised release for
three years.  I impose no fine because you don't have the means
to pay a fine.  I am required to impose the special assessment
of $100 which I impose now.  The mandatory and standard
conditions of release will apply.  In addition, the special
conditions set forth on pages 28 and 29 of your presentence
report will apply.  These are, first, a drug treatment
requirement which is that you must participate in an outpatient
treatment program approved by the United States Probation
Office which program may include testing to determine whether
you have reverted to using drugs.  You must contribute to the
costs of services rendered based on your ability to pay and the
availability of third-party payment.  I authorize the release
of available drug treatment evaluations and reports including
your presentence investigation report to the substance abuse
treatment provider.

        Second, you must submit your person and any property,
residence, vehicle, papers, computer or other electronic
communication, data storage devices, cloud storage or media and
effects, to a search by any United States probation officer
and, if needed, with the assistance of any law enforcement.

        The search is to be conducted when there is reasonable

KC35romS                      Sentence

1    suspicion concerning a violation of a condition, a provision or

2    unlawful conduct by you.  Failure to submit to a search may be

3    grounds for revocation of release.  You must warn any other

4    occupants that the premises may be subject to searches pursuant

5    to this condition.  Any search must be conducted at a

6    reasonable time and in a reasonable manner.

7           Now, at this point I would like to hear defense

8    counsel's recommendations.  As I understand it from your

9    submissions you seek to have Mr. Roman placed in an institution

10   that can give him medical care and drug treatment.  Please go

11   ahead, Ms. Han.  What are your recommendations?

12          MS. HAN:  Thank you, your Honor.  That's correct, we

13   would respectfully request that your Honor recommend that

14   Mr. Roman be designated to an institution that is equipped to

15   provide the kind of medical treatment that he needs and also

16   preferably an institution that is equipped to -- when

17   programming resumes after the pandemic -- that would provide

18   him the access to the kind of drug treatment that he needs.

19          THE COURT:  All right.  I adopt those proposals.

20          MR. HOBSON:  Your Honor, I apologize to interrupt but

21   while Ms. Han was speaking the defendant's video went out so I

22   want to just confirm that he is -- and his video just came back

23   so I want to confirm that he was able to hear before you

24   proceed.

25          THE COURT:  Thank you.

KC35romS                        Sentence

1              MR. HOBSON:  Can the marshals hear us?  Mr. Roman?

2              THE COURT:  I think I better ask my law clerk to get

3      in touch with the marshal.

4              MR. HOBSON:  I can see the marshal on the camera.

5              THE DEPUTY CLERK:  That's a different facility that

6      just interrupted our proceeding and I think kicked Mr. Roman

7      off.

8              THE COURT:  All right.

9              THE DEPUTY CLERK:  I am going to see if we can find

10     the number to get him back.

11             THE COURT:  In the meantime, I will ask the court

12     reporter to read me the last sentence you recorded once the

13     defendant is back on video.

14             (pause)

15             THE COURT:  Mr. Roman, can you see all of us?

16             THE DEFENDANT:  Yes, I can now.  I can't see you, I

17     see two of myself.

18             THE COURT:  We have a lot of technical difficulties

19     here.  Unless you want to take a break?

20             THE DEFENDANT:  No, no.  No, ma'am.  I'm good.  I'm

21     good.  I can't see you but I can hear you.

22             THE COURT:  I will try to speak especially distinctly.

23             Can the court reporter please read back what I said?

24             THE DEFENDANT:  I'm sorry, ma'am?  I was cut off when

25     my lawyer was about to speak.

KC35romS                          Sentence

1          THE COURT:  Okay.  I asked the court reporter to be
2    ready to read back the last thing that was said on the record
3    so that we are sure we have everyone.
4          THE DEFENDANT:  Okay.  Thank you.
5          (Record read)
6          THE DEFENDANT:  Yes, yes, I heard you.
7          THE COURT:  Does the government move to dismiss
8    charges?
9          MR. HOBSON:  Yes, your Honor.  We move to dismiss all
10   open counts.
11         THE COURT:  I grant the motion.
12         Is there anything further that counsel wished to say
13   before I read Mr. Roman his appeal rights?
14         MR. HOBSON:  Not from the government, your Honor.
15         MS. HAN:  Not from the defense, your Honor.
16         THE COURT:  All right.  Thank you.
17         Mr. Roman, we are coming to the end of the sentencing.
18   We are coming to the part where I read every defendant his
19   appeal rights.  You can appeal your conviction if you believe
20   that your guilty plea was somehow unlawful or involuntary or if
21   there is some other fundamental defect in the proceedings that
22   was not waived by your guilty plea.  You also have a statutory
23   right to appeal your sentence under certain circumstances.
24   With few exceptions, any notice of appeal must be filed within
25   14 days of judgment being entered in your case.  Judgment is

KC35romS                          Sentence

1    likely to be entered today or within the next day.  If you wish

2    to appeal and you don't have enough money to pay a lawyer, you

3    may apply for leave to appeal in forma pauperis.  If you

4    request, the Clerk of the Court will prepare and file a notice

5    of appeal on your behalf.

6              You made an eloquent statement about your remorse and

7    your intention to go straight.  I believe you and I hope that

8    you do that.

9              We are adjourned.  Thank you.

10                              o0o

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25