UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
X----------------------------------------------------X

UNITED STATES OF AMERICA,                    Index No. 19-cr-116 (KMW)

       -v.-

SAL CASTRO,

       Defendant.
X----------------------------------------------------X


# SAL CASTRO'S MEMORANDUM IN
# AID OF SENTENCING


LAW OFFICES OF
 DANIEL A. MCGUINNESS, PC
Daniel A. McGuinness
260 Madison Avenue, 17th Floor
New York, NY 10016
Attorney for Sal Castro

## Table of Contents

Introduction................................................................................................1

Sal Castro's Personal History and Characteristics....................................1

Sal Should be Sentenced to a Term Significantly Below the
Guidelines...................................................................................................3

A.  The Guidelines Suggest a Sentence of Incarceration that is
    Far Greater Than Necessary to Achieve the Ends of Justice
    in this Matter. ...................................................................................3

B.  Harsh Pretrial Incarceration in the MDC Warrants a
    Downward Variance...........................................................................5

C.  Sal Requires Intensive Mental Health Treatment............................8

D.  Sal Castro's Sentence Should Vary Downward to Reflect his
    Personal History and Characteristics. .............................................9

E.  Rehabilitative Efforts Made Since Arrest.......................................11

Conclusion ...............................................................................................12

**Table of Exhibits**

A          Report of Dr. Sanford Drob

B          February 2, 2021, Bureau of Prisons, Clinical Encounter Note

C          Support letter from Eric Rodriguez, Sal's partner

D          Support letter from C.C., Sal's daughter

E          Support letter from Ch. C. Sal's daughter

F          Support letter from Sasha Lopez, Sal's friend

G          Support letter from Shirley Chapman, Sal's friend

H          Support letter from Pedro Alexis Santana, Sal's cousin

I          Support letter from Steven Rodriguez, Sal's friend

J          BOP Educational Transcript and Certificates of Course Completion

## Introduction

As a young boy, Sal never saw his father and rarely saw his mother. He dreaded the times when he did. She was a violent drug addict who would strike him just for not liking the look on his face. He slept on the couch in an overcrowded apartment never knowing what to expect.

As a man, Sal faces his own addiction and mental health issues. His children, however, long to have him home as soon as possible. Despite Sal's traumatic childhood and lack of role models, he is a loving and supportive father who is known by those around him as a selfless and caring friend.

For the past year and a half, Sal has endured inhumane conditions for the past year and a half because of the pandemic. He has been cut off from his family, kept in solitary conditions, and even suffered through COVID alone in his cell. To the extent that punishment is needed to serve the ends of justice, no more need be meted out for Sal to even the scales or teach him a lesson. He respectfully requests that the Court not issue him a prolonged sentence, and instead direct him towards the mental health treatment he needs.

## Sal Castro's Personal History and Characteristics

Sal Castro has never had an easy life. He was born in 1978 in the Bronx to a single mother. His father, Julio "Tito" Arcy was never in the picture. Tito was imprisoned while Sal was in utero. Sal does not even know whether his father is alive or dead.

His mother was only 16 years old when he was born and suffered a debilitating crack-cocaine addiction. She mostly lived on the streets and left Sal to be raised by his grandmother. On the rare occasions his mother stopped by his home, she was unpredictable and violent. Sal recalls being punched in the face as a young child by his mother because she did not like the look he was giving her.

His grandmother raised Sal, his two half-brothers and his uncles in a one bed-room apartment. There were as many as 10 people crammed into that apartment at times. As a child he slept in the sofa in the living room. The entire family lived off his grandmother's social security checks and money was tight. Sal recalls instances of storing food on the fire escape in winter because the electricity had been turned off. He never had new clothes. Sal left his grandmother's apartment at age 13 to live with his aunt Carmen.

School proved too challenging Sal from a young age. He required special education classes as he was diagnosed to be emotionally disturbed and later with ADHD. At the last school he attended, Adlai Stevenson High School, he received failing grades in all of the classes he attended for three years. At the age of eighteen, he dropped out of high school and could barely read. Nevertheless, Sal earned his GED in 2015 while at Ft. Dix.

On top of Sal's mental health and learning disabilities, his adolescent use of substances impeded his development. Sal began drinking alcohol at thirteen years old. He would drink during the weekends and the week. By the age of seventeen, he was drinking on a daily basis. In his early 20s, he developed a heavy addiction to

Percocet. He benefited from the RDAP program during his previous incarceration but unfortunately relapsed and was again addicted prior to his arrest in this case.

Despite all this, Sal has managed to create a loving and supportive family. He lived with his partner Erica Rodriguez in New Jersey with their two daughters, C.C. and Ch. C. He worked a number of legitimate jobs to support his family, most recently his own sneaker company.

**Sal Should be Sentenced to a**
**<u>Term Significantly Below the Guidelines</u>**

**A.     The Guidelines Suggest a Sentence of Incarceration that is Far Greater Than Necessary to Achieve the Ends of Justice in this Matter.**

"It has long been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and punishment to ensue." *Pepper v. United States*, 562 U.S. 476, 487 (2011) (quoting *Koon v. United States*, 518 U.S. 81, 113 (1996)).  The legal framework for a sentencing court to accomplish this difficult task is codified as Section 3553(a) of Title 18 of the United States Code.

Section 3553(a) specifies the factors that courts are to consider in imposing a sentence.  *Dean v. United States*, __ U.S. __, 137 S. Ct. 1170, 1175 (2017).  The list of factors is preceded by what is known as the parsimony principle, a broad command that instructs courts to "impose a sentence sufficient, but not greater than necessary, to comply with" the four identified purposes of sentencing: just

3

punishment, deterrence, protection of the public, and rehabilitation. *Id.* A

sentencing court is then directed to take into account "the nature and circumstances

of the offense and the history and characteristics of the defendant," as well as "the

need for the sentence imposed" to serve the four overarching aims of sentencing. *Id.*

The Guidelines, once mandatory, now serve as one factor among several

courts must consider in determining an appropriate sentence. *See Gall v. United

States,* 552 U.S. 38, 59 (2007). At sentencing the judge "may not presume that the

Guidelines range is reasonable." *Id.* 50. "Extraordinary circumstances" are not

required to justify a sentence outside of the Guidelines range. *Id. at* 47. Sentencing

courts must consider and respond to nonfrivolous arguments that the Guideline

sentence itself reflects an unsound judgment because it fails to properly reflect §

3553(a) considerations, does not treat defendant characteristics in the proper way,

or a different sentence is appropriate regardless. *United States v. Rita,* 551 U.S.

338, 357 (2007). District courts are no longer required, or permitted, to simply defer

to Commission policies. *Id.*

In this case, the guidelines are driven by a drug weight that is attributable to

the conspiracy Sal joined. He plead guilty to entering into a conspiracy that dealt

with a large amount of cocaine, heroin and fentanyl but that plea does not reflect

the actual amount of narcotics he personally dealt or handled. To the extent that

the PSR at ¶38 or the government suggests that he personally dealt with the

amount he is "being held responsible for" (i.e., "6 kilograms of heroin, 60 kilograms

of cocaine, and 4 kilograms of fentanyl") he disputes this representation and

welcomes a hearing on the matter. Any differences in drug quantity between Sal and his co-conspirators is a result of their achieving more favorable plea deals. In fact, Sal personally dealt with less drugs than his co-conspirators who are noted as being "held responsible for" far less quantity but handled more. While Sal is bound by, and stands by his plea agreement that holds him accountable for the entire quantity of the conspiracy, he respectfully submits that it results in a guidelines range that overstates his culpability.

## B.   Harsh Pretrial Incarceration in the MDC Warrants a Downward Variance

Sal Castro was confined at the Metropolitan Correctional Center ("MCC") from February 2019 until approximately October 2019, when he was transferred to the Metropolitan Detention Center ("MDC") in Brooklyn, NY where he has remained. Even prior to the pandemic, the MDC presented harsh conditions. Infestations, mold and undercooked food are normal parts of life for inmates. The facility offered few educational programs or opportunities for self-improvement. With the COVID-19 pandemic, things became far worse.

At the beginning of the COVID-19 pandemic Sal requested bail pending sentencing. He argued, *inter alia*, that his incarceration put him at a heightened risk for catching COVID-19 and that his obesity put him at a heightened risk for complications. His request was denied on April 8, 2020.

The draconian conditions put into place at the MDC to combat COVID-19 are well known to this Court. Inmates were held in their cells around the clock, with limited to no access to shower, or email. Sal ate cold food inside his cell for every

meal. Commissary stopped making rounds. He was unable to even see his loved ones as social visits were cut off indefinitely. Though the cell bars he heard coughs as harbingers of the virus creeping towards him. He lived in terror for nearly a year until it finally got him.

On January 28, 2021, he was informed that he had tested positive for coronavirus. But he already knew he was sick. He struggled to breathe. At 350 pounds, he felt his large mass collapsing into itself with every breath and made an effort to expand his lungs and push it back up. He fought to stay awake each night, exhausted but fearing his breathing would stop at night. He developed a cough. Over time it worsened until he noticed red spots on his tissues. By the time he was seen by a nurse on February 2, 2021 he had been coughing blood for four days. He asked for help but was simply told that shortness of breathe was normal for coronavirus and was told to drink more fluids and to "purchase robitussin [through] commissary". *See* Ex. B. Thankfully, Sal recovered although it took months to regain his sense of smell and taste.

The horrific conditions at the MDC and MCC have led numerous other courts in this district and in the Eastern District to issue downward variances. *See e.g.*, *United States v. Searles*, No. 19-cr-381 (GBD) (S.D.N.Y. Mar. 25, 2021) (imposing 48-month sentence in Hobbs Act robbery case where bottom of guidelines range was 120 months); *United States v. Marmolejo*, No. 20-cr-1 (JSR) (S.D.N.Y. Feb. 3, 2021) (imposing 18-month sentence where bottom of guidelines range was 87 months); *United States v. Almonte*, No. 19-cr-621 (RA) (S.D.N.Y. Jan. 14, 2021) (imposing 15-

month sentence where bottom of guidelines range was 51 months); *United States v. Garcia*, No. 19-cr-593 (PAC) (S.D.N.Y. Dec. 3, 2020) (imposing 48-month sentence where bottom of guidelines range was 110 months); *United States v. Camacho*, No. 19-cr-389 (CM) (S.D.N.Y. Nov 19, 2020) (imposing time-served sentence where bottom of guidelines range was 57 months); *United States v. Paulino*, No. 19-cr-607 (AJN) (S.D.N.Y. Oct. 21, 2020) (imposing time-served sentence where bottom of guidelines ranges was 27 months); *United States v. Cirino*, No. 19-cr-323 (JSR) (S.D.N.Y. July 21, 2020) (imposing 10-month sentence where bottom of guidelines range was 57 months); *United States v. Aracena de Jesus*, No. 20-cr-19 (PAE) (S.D.N.Y. July 1, 2020) (imposing time-served sentence where bottom of guidelines range was 30 months). *See also*, *e.g.*, *United States v. Clark*, No. 20-cr-241 (NGG) (E.D.N.Y. May 7, 2021) (imposing 96 months in armed robbery case where bottom of guidelines range was 114 months); *United States v. Narcissi*, No. 20-cr-449 (RPK) (E.D.N.Y. Mar. 15, 2021) (imposing time-served sentence of 7 months, where guidelines range was 24-30 months); *United States v. Colon*, No. 15-cr-317 (MKB) (E.D.N.Y. Nov. 20, 2020) (imposing 18 months, consecutive to defendant's 18-month state sentence, where bottom of guidelines was 100 months); *United States v. Shi*, No. 19-cr-451 (PKC) (E.D.N.Y. Nov. 2, 2020) (imposing no prison where guidelines range was 12-18 months); *United States v. Piper*, No. 18-cr-008 (AMD) (E.D.N.Y. June 25, 2020) (imposing time-served sentence on resentencing where defendant had served approximately 24 months and bottom of guidelines range was 63 months).

A similar downward variance is undoubtedly appropriate here. Sal's experience of being held essentially in solitary confinement, denied visits from his family and fearing death as he was coughing up blood and told to buy his own medicine from commissary constitutes punishment far harsher than anyone deserves. This intensely grim time deserves considerable weight in fashioning the appropriate sentence.

## C.   Sal Requires Intensive Mental Health Treatment.

Among the factors to be considered at sentencing is 18 U.S.C. § 3553(a)(2)(D): "The need for the sentence imposed to provide the defendant with needed educational, vocational training, medical care, or other correctional treatment in the most effective manner." As detailed in the attached report of Dr. Sanford Drob, Sal suffers from profound mental illness. The needed care and correctional treatment in this case is intensive mental health treatment, specifically a residential Mentally Ill Chemical Abuser ("MICA") program. Although Sal has had the benefit of drug counseling, he has not received the proper level of treatment for his mental health issues. These mental health disorders no doubt played a large role in his initial addiction and relapse and will continue to plague him until properly treated.

Although the PSR reports that he was recommended by probation to a MICA program in 2016, this appears to be an error. I have contacted the probation department for the Southern District of New York and the District of New Jersey, where he was being supervised at the time, and neither department has any record of his attending a MICA program. There is, however, a record of his attending a

short-term out-patient drug program in Jersey City, which is consistent with Sal's description of the "MICA program" he thought he attended. This once-a-week outpatient program is a far cry from the residential treatment and aftercare provided by a MICA program that would address his substance abuse issue in conjunction with psychological and pharmacological treatment.

It should be the case that Sal can receive adequate mental health treatment while in BOP custody, but sadly that is not the case. Despite his mental health issues being raised in his prior sentencing, including his hospitalization for a possible schizophrenic episode, it does not appear that he was ever given the appropriate level of care for his mental health disorders. To give Sal a fair chance at rehabilitation, he should be recommended for a MICA program as a condition of supervised release. This treatment will undoubtedly serve to rehabilitate Sal better than additional time in prison.

### D. Sal Castro's Sentence Should Vary Downward to Reflect his Personal History and Characteristics.

The Supreme Court has observed the central importance of the tailoring each sentence to the individual before the court: "The punishment should fit the offender and not merely the crime." *Pepper*, *supra*, 562 U.S., at 487. Sal stands before the Court for the same offense that he was previously convicted with the same untreated mental health convictions. Despite the numerous challenges he has endured, he has worked hard to be a loving and supportive parent to his children.

While Sal has struggled to maintain a law-abiding life in the face of his mental health illness and addictions, he has succeeded in being a loving a supportive parent. His daughters' letters attest to this success. His daughter, C.C., writes, "He always made sure to tell me how much he loved me. To tell me that it would always be me and him. That he will always be by my side no matter what. He will continue to love and support me through thick and thin." Ex. D. His other daughter, Ch. C., similarly describes him as a "caring man who has always looked out for my best interest." Ex. E. Sal's ability to create this bond with his daughters despite his own childhood trauma, lack of parental guidance, and mental challenges is a strong testament to his character and ability to change for the better.

The influence and encouragement Sal gives to those around him demonstrate that his good values. Sasha Lopez writes that Sal is a "dependable, caring and loving person" who has been "a great uncle figure to my 3 children." Ex. F. Shirley Chapman states that she has known Sal for 26 years and that he has always given her good advice to pursue education and stay positive. Ex. G. Ms. Chapman is now pursuing a graduate degree in public health and credits Sal's support as "vital" to her accomplishments. *Id.* His cousin, Pedro Alexis Santana, relates a similar story of how Sal directed him down the right path:

> Throughout my high-school years when I was considering working to support my new born son at the time Sal forbade it and worked extra hours in his job at a sneaker store so that I may focus on my education. Because of that selfless act I am a 37 year old business owner, home owner and proud father…

Ex. H. Sal was unable to conquer his own demons and make the correct, lawful choices in this matter and went for the quick easy money. But he knows the right path. He has helped others and encouraged others to walk down it and is determined to get there himself.

Mr. Santana also illustrates the compassion that defines Sal by recalling his mother's final days in the hospital. *Id.* He writes that he never showed up at his mother's hospital bed and did not see that Sal's name on the visitor's chart already signed in. He saw Sal there day after day asking her to retell her favorite stories despite having heard them all numerous times before. Steven Rodriguez, who has been Sal's friend for 25 years, sums Sal up in a single word: "Selfless." Ex. I. This theme of selflessness, compassion and support is present throughout all the letters of those who know him best. Kindness and a desire to help others is at Sal's core.

### E.   Rehabilitative Efforts Made Since Arrest

Sal has tried to take advantage of any opportunity to better himself since his arrest. Despite the limited education opportunities at the pretrial holding facilities, Sal took several educational courses, including, Finance Modification, Alternatives to Drug Dealing, Conflict Resolution, and Leadership and Influence. *See* Ex. J. The fact that he was able to complete so many courses despite the fact that the pandemic responses drastically curtailed program opportunities at the MDC demonstrates his strong motivation to head down a more productive path. He has also worked at the facility as the head orderly. Sal plans to continue to grow and

prepare himself for his eventual release by pursuing a Commercial Driver's License program at his designated facility.

<u>Conclusion</u>

For the reasons stated above, Sal Castro respectfully requests that the Court sentence him to a sentence significantly below the guidelines and order a MICA program as a condition of his supervised release.

Dated: New York, NY
      August 18, 2021

Respectfully submitted,

Daniel A. McGuinness
260 Madison Avenue, Floor 17
New York, NY 10016
(212) 679-1990
dan@legalmcg.com

# EXHIBIT A

REDACTED

# EXHIBIT B

# Bureau of Prisons
## Health Services
## Clinical Encounter - Administrative Note

| | | | | |
|---|---|---|---|---|
| Inmate Name: | VALAZQUEZ, SAMMY | | Reg #: | 65709-054 |
| Date of Birth: | ▮▮▮▮▮▮ | Sex: M   Race: WHITE | Facility: | BRO |
| Note Date: | 02/02/2021 18:32 | Provider:   Ortiz, Lydia RN | Unit: | J05 |

Admin Note - General Administrative Note encounter performed at Housing Unit.

**Administrative Notes:**

ADMINISTRATIVE NOTE   **1**        Provider:  Ortiz, Lydia RN

while completing insulin on unit inmate c/o feeling sob and cough - with scant amount of blood x 4d

Due to the COVID-19 National Emergency declared by the POTUS and Secretary of Health, inmate was evaluated at his cell door by this RN. Evaluation conducted within these limitations to assist in the mitigation of transmission of COVID-19 thereby helping to protect the inmate population and staff.

Inmate tested positive for Covid on 1/26
evaluated at door - pulse ox 95% T 98.2
encouraged to increase fluids
purchase robitussin thru commissary
common to feel sob with covid - will place on sick call
denies body aches.

**Temperature:**

| **Date** | **Time** | **Fahrenheit** | **Celsius** | **Location** | **Provider** |
|---|---|---|---|---|---|
| 02/02/2021 | 18:35 BRO | 98.2 | 36.8 | Forehead | Ortiz, Lydia RN |

**SaO2:**

| **Date** | **Time** | **Value(%)** | **Air** | **Provider** |
|---|---|---|---|---|
| 02/02/2021 | 18:35 BRO | 95 | Room Air | Ortiz, Lydia RN |

Schedule:

| **Activity** | **Date Scheduled** | **Scheduled Provider** |
|---|---|---|
| Sick Call/Triage | 02/02/2021 00:00 | MLP 01 |
| sob, cough with blood tinged sputum x4d | | |

**Disposition:**

Will Be Placed on Callout
Return Immediately if Condition Worsens

**Patient Education Topics:**

| Date Initiated | Format | Handout/Topic | Provider | Outcome |
|---|---|---|---|---|
| 02/02/2021 | Counseling | Plan of Care | Ortiz, Lydia | Needs Reinforcement |

**Copay Required:** No          **Cosign Required:**  Yes

**Telephone/Verbal Order:**  No

Completed by Ortiz, Lydia RN on 02/02/2021 18:38

Requested to be cosigned by  Awd, Rame MD.

Cosign documentation will be displayed on the following page.

# Bureau of Prisons
# Health Services
# Cosign/Review

| | | | | | |
|---|---|---|---|---|---|
| Inmate Name: | VALAZQUEZ, SAMMY | | | Reg #: | 65709-054 |
| Date of Birth: | ■■■■■ | Sex: | M | Race: | WHITE |
| Encounter Date: | 02/02/2021 18:32 | Provider: | Ortiz, Lydia RN | Facility: | BRO |

**Cosigned by Awd, Rame MD on 02/03/2021 07:57.**

# EXHIBIT C

Erica M Rodriguez

███████

███████████

March 17, 2021

Re: Sammy Valazquez (65709-054) aka Sal Castro

To: Honorable Judge Kimba M Wood,

I have known Sal Castro since 1996. We have 2 children together, Chanel (19) and Ciara (15).  We all miss him very much.  He is a loving partner, father and friend. This has been a terrible time for our family. Not only because he is away but because he was incarcerated during a pandemic.  He is extremely overweight and struggles to breath. Our biggest fear played out when he was diagnosed positive for Covid-19. I wouldn't wish that on any family. That's when you think about all the things that you would've done different in life.

I'm not sure about the details regarding this case, I watch a lot of Law & Order, but that show doesn't prepare you for the legal system in real life. I don't get how hearsay can take you away from your family and friends. I'll never understand that. I'm sure that you know best, and you will make a fair decision. Sal is a very fun, funny, loving man and he is missed by many people.  I pray daily that he'll be home soon. Thanks for your time.

Sincerely,

*Erica Rodriguez*

Erica M Rodriguez

# EXHIBIT D

Dear Judge,

Good morning, good afternoon, or good evening to whomever gets the pleasure to read this depressing letter. You guys probably get the same sob-story everyday. The one about little boys and girls begging to see/hear from their parents. The one about lovers longing for their partners' touch. Or just worried loved ones who need to be relieved of their despair. I'm not here to show you how I am different from these other broken families. I am here to share how the "justice system" broke mine.

I was just thirteen years old when I came home to the beginning of the mayhem. I remember that day like it was yesterday. I wanted to go to Target with my best friend. I begged and begged my mother so that she would let me go. She insisted that I came home. When I finally arrived at my house it appeared to be torn upside down, just like my mothers smile. She sat me down and told me the poignant news. This was now my reality.

I miss my dad so much. There are no words in my vocabulary, nor the english language, that can describe my affliction, my agony, or my longing to see my father in its entirety. Emails are simply not enough. There is nothing more important than a little girl's relationship with her father. Children's relationships with their parents, or one's childhood in total, determines who/what kind of person he/she will be. I continuously ponder who I will be.

I also wonder who I would have become without the influence of my father. All of his characteristics have rubbed off on me. He instilled confidence in me at a young age. He was always confident and sure of himself. I knew that's what I had to be. He was opinionated and, almost, always right. He taught me independence. To not depend on anyone for the fact that all I have is myself, and he always made sure to remind me that I had him too. He always made sure to tell me how much he loved me. To tell me that it would always be me and him. That he will always be by my side no matter what. He will continue to love and support me through thick and thin. Now I can only feel this love spiritually. He has been taken away from me for two years. It feels as if an entire lifetime has passed without him. I need my father more than ever. Who doesn't?

I want my father to see the woman that I have become. I wonder if he will be proud. I want to get to know him again. To differentiate the contrast of our old selves, our past personalities. I want to be able to spend time with him. To enhance our relationship. To build a stronger bond. It sucks going to my friends house and seeing them be able to joke around with their fathers, to ask their fathers to pick them up after a long day, or even to get a random phone call from their fathers to see how they are doing. They have everything that I don't. Please send my father home soon.

Sincerely,



# EXHIBIT E

# Dear Honorable Judge,

My name is ▮▮▮▮▮▮▮ and I am the daughter of Sal Castro. Throughout my entire existence my dad has always done right by his kids. He is a dedicated father and plays an important role in my family dynamic. He's helped me through so many things, including my depression when I was in high school. He is a caring man who has  always looked out for my best  interest.

In  times like these, especially now, I miss my father and how he is such a influential person in my life. And me being apart from him makes me feel lost. What I miss most about him is the advice he always had to offer me and all the talks we would have.  just miss have someone to go to when I have any issues in my life. My father was a giving person and always made sure my family was alright.

From,



# EXHIBIT F

*March 11, 2021*

*To whom It May Concern;*

*I have known Sal for 26 years now. For the longest time, Sal has always had encouraging words and support for me and my academic and professional goals In the years I have known him, he has always served as an excellent motivational speaker and confidant to discuss my plans for success. He is enthusiastic, humble, and honest. When I started my undergraduate program his excellent communication skills, encouraged me to press on. When I struggled to communicate with my professors and in public speaking assignments. He is naturally articulate and has always served as a point of reference for dreaming big and using my adversity as a tool instead of a detriment to my dreams. Reframing my upbringing with a new lens I pressed on and have accomplished so much professionally and academically.*

*I am now in pursuit of my graduate degree in Public health, and his moral support has been vital in all my pursuits. His refreshing candor and unique objectivity have always served as inspiration to me.*

**Cordially,**

**Shirley Chapman**

Contact information
Added by counsel:

Shirley Chapman

# EXHIBIT G

February 16, 2021


To the Honorable Judge Kimba M Wood,

My name is Pedro Alexis Santana. Sal Castro is my Cousin and I am writing on his behalf to hopefully shed some light on the kind of person he has been and is. I am a father of three lovely children that I have the privilege to teach morals, kindness, respect, values and most importantly love. Sal has earned my respect and love countless times throughout my life. I am eternally grateful to him for being the main source of emotional support to my mother during her battle with cancer in 2017. I can not recall a single time I would show up to the hospital to visit my mother and not see his name on her visitors chart already signed in. I recall my mother telling me in her last days that she lasted as long as she did because my cousin Sal would sit there and make her recant all of her stories from her childhood although he'd heard them time and time again. When my mother passed she requested a hug from both of her sons as she called Sal and I.


My cousin  Sal Castro filled the big brother role in my life from a very early age. Throughout my high-school years when I was considering working to support my new born son at the time Sal forbade it and worked extra hours in his job at a sneaker store so that I may focus on my education. Because of that selfless act today I am a 37 year old business owner, home owner and proud father to a son that I am giving that same moral and financial support that Sal once gave me so that my son can pursue his dream career of being in the United States of America's Air Force.


I was shocked to hear of my cousins alleged involvement in this case and I do not know any details. What I do know is that there are people in this world that when they are incarcerated this world is a safer and better place and Sal Castro is not one of those people and I hope you may be lenient so that his kindness and love can return to our community and family.


Thank you for your time.

Pedro Alexis Santana


Contact information
Added by counsel:

Pedro Alexis Santana

# EXHIBIT H

**March 16,2021**

Respected authorities;

My name is Sasha Lopez and I am writing this letter to provide character reference about Sal Castro. I have known Sal my entire life our mothers were more like sisters. We grew up very close, more like family than friends. Sal has always been a dependable, caring and loving person. He always goes above and beyond to help people in any situation. He has been there for me as a brother providing emotional support as well as being a great uncle figure to my 3 children! Sal is a person that shows extreme compassion and friendliness towards other people. We miss him and love him dearly. And for this reason I plead that you show him some leniency in your decision.

Respectfully



Sasha Lopez

Contact information
Added by counsel:

# EXHIBIT I



# Mr. Security Intercoms & Electric

939 Croes Ave Suit 3B
Bronx NY 10473
Email:Mr.Secrue.Intercoms@gmail.com    (347)226 -1589

**January 23, 2020**

To whom it may concern

My name is Steven Rodriguez, Sal Castro aka Sammy Velazquez (65709-054) and I have been friends for 25 years. I write this letter to you in hopes of giving you a better insight of the man I know my friend to be. Over the years he's showed me what it's like to be committed, how to always stand for what you believe even when others doubt you and most importantly how family means everything.

 By demonstrating commitment he has been able to remain consistent in his children's life. He has also guided them and encouraged their journey towards obtaining an education. He instills structure so that they can face life's challenges and never back down even when their backs against the wall. He loves whole heartedly and would give you the shirt off his back if he had to. One word to describe him is selfless. It is not what he does for others but his intentions to always see others happy; he will help out in any way possible. I hope that you see it in your heart what I've seen and felt about throw out the years.

Very truly yours,

*S.R.*

STEVEN RODRIGUEZ
MR.SECURITY INTERCOMS & ELETRIC

# EXHIBIT J

```
   BROBV           *        INMATE EDUCATION DATA      *      07-26-2021
PAGE 001 OF 001 *                 TRANSCRIPT          *      07:54:58


REGISTER NO: 65709-054       NAME..: VALAZQUEZ                 FUNC: PRT
FORMAT.....: TRANSCRIPT       RSP OF: BRO-BROOKLYN MDC


------------------------- EDUCATION INFORMATION -------------------------
FACL ASSIGNMENT DESCRIPTION                START DATE/TIME STOP DATE/TIME
BRO  ESL HAS    ENGLISH PROFICIENT         01-30-2014 0856 CURRENT
BRO  GED EN     ENROLL GED NON-PROMOTABLE  02-21-2013 0950 CURRENT


------------------------- EDUCATION COURSES -------------------------
SUB-FACL   DESCRIPTION                START DATE  STOP DATE EVNT AC LV  HRS
BRO  M     FINANCE MODIFICATION       06-23-2020 06-26-2020  P  C  P     8
BRO  M     ALTERNATIVE TO DRUG DEALING 03-03-2020 03-19-2020 P  C  P     2
NYM  M     CONFLICT RESOLUTION CORP TRAIN 08-23-2019 09-05-2019 P C P   12
NYM  M     LEADERSHIP AND INFLUENCE   08-07-2019 08-14-2019  P  C  P    12
FTD  RDAP  GED W SLN RM239 M-F 0900-1030 05-22-2014 05-11-2015 P W I   200
FTD  RDAP  GENERAL SCIENCE CLASS      10-07-2013 12-29-2013  P  C  P    24
FTD  GP    LOGIC AND MACH CTL TUES EVES 10-07-2013 12-29-2013 P C P    24
FTD  GP    LEATHER CLASS              01-13-2014 03-31-2014  P  W  I    30
FTD  GP    PAINTING CLASS EAST        05-21-2013 08-15-2013  P  C  P    30


------------------------- HIGH TEST SCORES -------------------------
TEST        SUBTEST        SCORE     TEST DATE     TEST FACL  FORM     STATE
TABE D      BATTERY         2.9      05-02-2014     FTD       10
            LANGUAGE        2.2      05-02-2014     FTD       10
            MATH APPL       3.7      05-02-2014     FTD       10
            MATH COMP       3.4      05-02-2014     FTD       10
            READING         3.1      05-02-2014     FTD       10
            TOTAL MATH      3.4      05-02-2014     FTD       10








G0000      TRANSACTION SUCCESSFULLY COMPLETED
```

## U.S. Department of Justice
## Federal Bureau of Prisons
# Certificate of Completion

We present this certificate to

# SAMMY VALAZQUEZ

## Financial - Modified Operations

*Define Yourself Before You are Defined*

*Dr. M. Gantt*

**Dr. M. Gantt – Supervisor of Education
Metropolitan Detention Center**



*Mr. Murray*

**Mr. J. Murray - Teacher
July 16, 2020**



**U.S. Department of Justice**
Federal Bureau of Prisons

# Certificate of Completion

We present this Certificate to

*Sammy Valazquez*

Leadership Series
*Instructor-led training developed by the*
*Education Department at MDC Brooklyn*
*And St. Francis College*

*Dr. M. Gantt*

**Dr. M. Gantt – Supervisor of Education**
**January 14, 2020**



# CERTIFICATE OF COMPLETION

*This certificate is awarded to*

## SAMMY VELAZZUEZ

*for your completion of the Re-entry Education program*

## Leadership and Influence

*August 14th, 2019*

A. Delgado, Teacher
MCC New York Education Department