```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: March 25, 2024
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------X

UNITED STATES OF AMERICA

                       -against-                                19-CR-116 (KMW)

                                                          **OPINION & ORDER**

SAL CASTRO,

                            Defendant.

--------------------------------------------------------X

KIMBA M. WOOD, United States District Judge:

Defendant Sal Castro, proceeding *pro se*, has filed a motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A), (Def.'s June Mot., ECF No. 390), and a motion for a reduction in his sentence pursuant to 18 U.S.C. § 3582(c)(2). (Def.'s Feb. Mot., ECF No. 398.) The Government opposes Castro's motion for compassionate release.[1] (Gov't Opp'n, ECF No. 392.) For the reasons set forth below, Castro's motions are DENIED.

## BACKGROUND

On February 27, 2019, Castro was arrested in connection with his involvement with a drug trafficking organization ("DTO") that distributed large quantities of fentanyl-laced heroin and cocaine in the Bronx, when he was on supervised release for a prior offense.[2] (PSR ¶¶ 15,

---

[1] On August 23, 2023, Castro filed his reply to the Government's letter in opposition and a motion to amend his underlying motion for compassionate release. (Def.'s Reply, ECF No. 394.) Castro's motion to amend is granted, and the Court has considered his additional arguments in support of his motion for compassionate release. Castro requested also that the Court stay any decision on his motion for compassionate release until after November 1, 2023, when the U.S. Sentencing Commission's ("Sentencing Commission") 2023 Amendments became effective. (*Id.* at 3.) In light of Castro's request, the Court has refrained from ruling on his motion until after November 1, 2023.

[2] Castro was sentenced previously to a term of 60 months' imprisonment for conspiring to distribute and possess with intent to distribute cocaine. (*See* Presentence Investigation Report ("PSR") ¶ 59, ECF No. 104.)

27, 33, 61; Gov't Opp'n at 2.)  Nine defendants were indicted and charged for their involvement with the DTO.  (PSR ¶¶ 2, 33.)  Castro was considered one of the most culpable defendants because he supplied large quantities of fentanyl, heroin, and cocaine to the DTO.[3]  (*Id.* ¶¶ 36, 38.)  Co-defendants Adalberto Velazquez, Joel Lopez, and Raymond Resto were considered the other three most culpable defendants.  (*Id.* ¶ 36.)

On October 16, 2019, Castro pleaded guilty to conspiring to distribute and possess with intent to distribute fentanyl, heroin, and cocaine, in violation of 21 U.S.C. §§ 846, 841(b)(1)(B).  (J. at 1, ECF No. 341; Gov't Opp'n at 2.)  On October 6, 2021, the Court sentenced Castro to a term of imprisonment of 101 months, to run consecutively with a term of imprisonment of 18 months for Castro's violation of his supervised release.  (J. at 2; Gov't Opp'n at 2.)  Co-defendants Velazquez, Lopez, and Resto received, respectively, sentences of 188 months' imprisonment, 76 months' imprisonment, and time served.  (Gov't Opp'n at 5; J. at 2, *United States v. Resto*, No. 19-CR-116, ECF No. 358.)

Castro is currently incarcerated at FCI Fort Dix in New Jersey, and his projected release date is November 05, 2026.  *See Find an Inmate*, Fed. Bureau of Prisons, https://www.bop.gov/inmateloc// (last visited Mar. 25, 2024.)

## LEGAL STANDARD

I. **Section 3582(c)(1)(A)**

Pursuant to Section 3582(c)(1)(A), a court may reduce a defendant's sentence if the court finds that "extraordinary and compelling reasons warrant such a reduction."  18 U.S.C. § 3582(c)(1)(A).  Three requirements must be met before a court can grant such relief.  First, a

---

[3] Castro was held responsible for distributing six kilograms of heroin, sixty kilograms of cocaine, and four kilograms of fentanyl.  (PSR ¶¶ 38, 44; Gov't Opp'n at 1–2.)

defendant must "fully exhaust[]" all administrative remedies with the Bureau of Prisons ("BOP").  *Id.*  Second, a defendant must show that "extraordinary and compelling reasons warrant such a reduction."[4]  *Id*.  Third, the Section 3553(a) sentencing factors must support early release.  *Id.*

## II.   Section 3582(c)(2)

Pursuant to Section 3582(c)(2), a court may reduce a defendant's term of imprisonment "in the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission . . . after considering the [Section 3553(a) factors,] if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission."  18 U.S.C. § 3582(c)(2).  A court may not reduce a defendant's term of imprisonment pursuant to 18 U.S.C. § 3582(c)(2) "to a term that is less than the minimum of the amended guideline range."  U.S.S.G. § 1B.10(b)(2)(A) & cmt. n.3.

Effective November 1, 2023, in its Amendment 821, the Sentencing Commission amended the United States Sentencing Guidelines Manual.  Part A amends Guidelines § 4A1.1, by reducing from two (2) points to one (1) point the upward adjustment for offenders who committed the instant offense while under any criminal sentence, and by limiting this adjustment to defendants who received seven (7) or more criminal history points.  Part B amends Guidelines § 4C1.1, by providing a 2-level offense level reduction for offenders with zero (0) criminal history points who meet specified eligibility criteria.

---

[4] The Court's analysis as to whether a defendant has demonstrated extraordinary and compelling reasons is now controlled by the amended version of U.S.S.G. § 1B1.13, effective November 1, 2023.

## DISCUSSION

I. **Motion Pursuant to Section 3582(c)(1)(A)**

    A. **Castro's Motion is Properly Before the Court**

A defendant may move for compassionate release only after he has "fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on [his] behalf or the lapse of 30 days from the receipt of such a request by the warden of [his] facility, whichever is earlier[.]" 18 U.S.C. § 3582(c)(1)(A). The parties do not dispute that Castro has exhausted his administrative remedies. The Government states that Castro filed an administrative request with the Warden of FCI Fort Dix, and the Warden denied his request. (Gov't Opp'n at 3.)

    B. **Castro Has Not Demonstrated "Extraordinary and Compelling" Reasons for Compassionate Release**

In his motion, Castro argues that extraordinary and compelling reasons exist because (1) he received a harsher sentence than Resto, one of his co-defendants; (2) he suffers from schizophrenia; (3) his mother is currently undergoing chemotherapy for pelvic cancer, and he is his mother's only available caregiver during the time that his mother's part-time home attendant is not present; and (4) he is rehabilitated. (*See* Def.'s June Mot. at 1–2; *see generally* Def.'s Reply.)

First, the fact that one of Castro's co-defendants, Resto, received a lesser sentence does not give rise to an extraordinary and compelling circumstance. The Court sentenced Resto to time served based, in part, on Resto's exceptional pre-sentence conduct[5] in the Metropolitan Detention Center; his prior contributions to his community; and his health, which he claimed had

---

[5] As the Court noted at sentencing, Resto had been a "model inmate." (*See* Resto Tr. at 17:17, *United States v. Resto*, No. 19-CR-116, ECF No. 356.) Resto received "no violations in prison," "helped other inmates substantially," and "showed efforts at rehabilitation by taking many courses and by acting as a sort of leader in the MDC[.]" (*Id.* at 17:17–23.)

4

suffered from the long-term effects of a COVID-19 infection.[6] (*See* Resto Tr. at 17:17–23, 19:2–7, 22:11–15, 23:1–7.) In Castro's case, the same mitigating circumstances were not present. When Castro was awaiting sentencing in prison, for example, he was found in possession of a dangerous weapon, which "was a contributor to lockdowns and [the] unpleasant [conditions] in prison."[7] (Sent'g Tr. at 10:25–11:11, 14:6–9, ECF No. 339.)

Second, Castro's claim that he suffers from schizophrenia does not provide a basis for finding that an extraordinary and compelling circumstance exists, because he has failed to produce evidence to substantiate his claim that he has a current diagnosis of schizophrenia.[8] However, even if Castro had substantiated his claim, the Court would not find that an extraordinary and compelling circumstance exists on this basis, unless BOP were failing to provide adequate medical care to him. *See Smith v. United States*, No. 13-CR-0889, 2023 WL 3052216, at *5 (S.D.N.Y. Apr. 24, 2023) (Berman, J.) (holding that the defendant's schizophrenia did not give rise to an extraordinary and compelling reason because the defendant's condition was adequately managed with prescription medications).

Third, Castro has not established an extraordinary and compelling circumstance based on family hardship. Castro claims that his mother is undergoing chemotherapy for pelvic cancer

---

[6] At Resto's sentencing, the Court noted also that Resto was "a very good family man." (Resto Tr. at 18:7–15.)
[7] Castro's sentence is also not disproportionate relative to those of Velazquez and Lopez. Velazquez and Lopez received sentences of 188 months' and 76 months' imprisonment, respectively. (Gov't Opp'n at 5.)
[8] On February 29, 2024, the Court ordered the Government "to provide the Court with a letter from BOP addressing whether its physicians have (1) evaluated Castro for schizophrenia; and (2) diagnosed Castro with schizophrenia." (Order, ECF No. 399.) The Court instructed that "[i]f BOP's physicians have evaluated Castro for schizophrenia, and diagnosed Castro with schizophrenia, BOP should outline any treatments BOP's physicians have provided, or recommended to Castro, to treat his schizophrenia." (*Id.*) On March 8, 2024, the Government provided the Court with a letter from Castro's Primary Care Provider at FCI Fort Dix, Dr. Ravi Sood. Dr. Sood stated that BOP diagnosed Castro initially with unspecified schizophrenia when he was admitted to the MCC. For approximately two years, however, Castro did not evidence or report symptoms of psychosis. As a result, Dr. Sood stated that Castro's previous diagnosis of unspecified schizophrenia was "changed to resolved, and [Castro] was reduced to Mental Health - Care Level 1 (Inmates with Care Level 1 needs are generally healthy)." As noted in Dr. Sood's letter, if Castro is feeling unwell, he "should report this through the institution's Sick Call procedures or he may send a message through the inmate TRULINCS (electronic messaging system) directly to Psychology Services."

and that he is his mother's only available caregiver during the time that her part-time home attendant is not present. (Def.'s Reply at 2–3.) Although Castro's claims might provide a basis for finding that an extraordinary and compelling circumstance exists, *see* U.S.S.G. § 1B1.13(3)(C), Castro has failed to offer any support for his claims. Without any evidence to corroborate Castro's claims (1) that his mother is undergoing treatment for pelvic cancer, (2) that she needs a full-time caregiver, and (3) that he is her only available caregiver during the time that her part-time home attendant is not present, the Court declines to find that an extraordinary and compelling circumstance exists on this basis.[9]  *United States v. Denko*, No. 20-CR-15, 2022 WL 1124826, at *2 (E.D.N.Y. Apr. 14, 2022) (defendant failed to meet his burden to demonstrate that he was his children's only available caregiver because "[h]e [did] not submit[] medical documents, an affidavit from his wife, or any evidence beyond his own statements in support of his claims regarding his wife's incapacity.").

Castro's only remaining argument is that his post-sentence rehabilitation constitutes an extraordinary and compelling reason for release. But 28 U.S.C. § 994(t) states that "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." 28 U.S.C. § 994(t); *see also* U.S.S.G. § 1B1.13(d). The Court commends Castro for his participation in programming during his term of incarceration, but his participation is not

---

[9] Section 1B1.13(3)(C) states that an extraordinary and compelling reason exists when a defendant's parent is incapacitated and "the defendant would be the *only available caregiver for the parent.*" U.S.S.G. § 1B1.13(3)(C) (emphasis added). The Court notes that Castro concedes that his mother has a "part time home attendant," (Def.'s Reply at 2–3), and that Castro has not argued explicitly that he is his mother's only available caregiver. Because Castro is proceeding *pro se*, the Court construes Castro's motion liberally. The Court evaluates Castro's motion as his having argued that an extraordinary and compelling reason exists because he is his mother's only available caregiver during the time that her part-time home attendant is not present, which might arguably be a basis for finding that an extraordinary and compelling reason exists. *See* U.S.S.G. § 1B1.13(3)(C). However, as noted above, Castro has not corroborated his claims. To the extent Castro's mother is undergoing chemotherapy, the Court wishes Castro's mother well and a full recovery. Should Castro wish to file a new motion for compassionate release with evidence to corroborate his claims concerning his mother, her needs, and his being the only available caregiver during the time that her part-time home attendant is not present, he may do so at any time. As explained below, however, even if Castro could demonstrate that an "extraordinary and compelling" reason for a sentence reduction exists, his motion would be likely to fail because the § 3553(a) factors do not support his early release.

extraordinary and compelling on its own.[10]  *See e.g.*, *United States v. Corbett*, No. 10-CR-184, 2023 WL 8073638, at *7 (Engelmayer, J.) (holding that participation in rehabilitative programming is expected of inmates and does not constitute an extraordinary and compelling circumstance) (collecting cases).

### C. The Section 3553(a) Factors Weigh Against Release

Even if Castro could demonstrate that an "extraordinary and compelling" reason for a sentence reduction exists, his motion would be likely to fail because the § 3553(a) factors do not support his early release.  Although Castro had a difficult upbringing and appears to continue to suffer from health challenges, these factors do not outweigh the seriousness of his offense.  As the Court stated at sentencing, Castro's "offense is serious not simply because of the vast quantity of drugs that Mr. Castro supplied to the [] DTO but also because of the fact that this was a second offense, basically a slap in the face of the Court that had [previously] been quite lenient[.]"  (Sent'g Tr. at 13:6–10.)  Castro committed the instant offense while he was on supervised release, and the Court maintains its view that Castro's sentence is necessary to reflect the seriousness of the offense, and to attempt to specifically deter Castro from engaging in similar misconduct after he is released.  (*Id.* at 13:25–14:3.)  In addition, Castro's sentence is necessary to promote general deterrence.  (*Id.*)

The Court finds that the § 3553(a) factors weigh against Castro's release.

## II.    Motion Pursuant to Section 3582(c)(2)

Castro is not eligible for a reduction in his sentence pursuant to Section 3582(c)(2) because Castro's original sentence is below his amended Guideline range.

---

[10] Nor does Castro establish that extraordinary and compelling reasons for a sentence reduction exist when rehabilitation is viewed in combination with his other arguments for release.

On December 18, 2023, the United States Probation Department ("Probation") issued a report stating that Castro is eligible for a recalculation of his Guideline range because he received an enhancement for committing the instant offense while under a criminal sentence. (Suppl. PSR at 2, ECF No. 397.)  However, the recalculation does not help him.  Castro's original Guideline range was 135 to 168 months' imprisonment, based on an offense level of 31 and a criminal history category of III.[11]  (*Id.* at 3.)  Pursuant to Amendment 821, Castro no longer receives a Section 4A1.1 enhancement because he has six or fewer criminal history points.  (*Id.* at 2.)  As a result, Castro's amended Guideline range is 121 to 151 months' imprisonment, based on an offense level of 31 and a criminal history category of II.  (*Id.* at 3.) Probation determined, however, that Castro is not eligible for a sentence reduction because Castro's original sentence of 101 months is below his reduced Guideline range of 121 to 151 months' imprisonment.  (*Id.*)

The Court adopts Probation's calculation as to Castro's amended Guideline range and finds that Castro is ineligible for a reduction in his sentence pursuant to Amendment 821 because Castro's original sentence is below his amended Guideline range.

---

[11] Castro's offense carries a five-year mandatory minimum.  (*See* Suppl. PSR at 3.)

8

## CONCLUSION

For the foregoing reasons, Castro's motions for compassionate release and a reduction in his sentence pursuant to §§ 3582(c)(1)(A) and 3582(c)(2) are DENIED. The Clerk is respectfully requested to close the pending motions at ECF Nos. 390, 394, and 398.

SO ORDERED.

Dated: New York, New York
       March 25, 2024

                                           */s/ Kimba M. Wood*
                                           KIMBA M. WOOD
                                       United States District Judge